JOHN J. McCARTHY *v.* WARDEN, STATE PRISON
(13560)

PETERS, C. J., HEALEY, GLASS, COVELLO and HULL, Js.

Argued November 8—decision released December 26, 1989

*L. D. McCallum,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellant-appellee (respondent).

*Todd D. Fernow,* with whom were *Michael R. Sheldon* and, on the brief, *Raymond J. Rigat,* legal intern, for the appellee-appellant (petitioner).

PETERS, C. J. The principal issue in this appeal is the applicability of res judicata to foreclose relitigation, in a state court habeas corpus action, of constitutional claims regarding prison disciplinary proceedings that were previously adjudicated in a federal civil rights action. The petitioner, John J. McCarthy, filed an

amended petition for a writ of habeas corpus directed to the respondent, the warden of the state prison, challenging the validity of twenty-five separate disciplinary proceedings resulting in his forfeiture of good time credits. The trial court, *O'Neill, J.,* granted the respondent's motion to quash the claims of invalidity relating to twenty disciplinary actions predating *Superintendent* v. *Hill,* 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). After a hearing on the merits of three of the remaining claims, the trial court, *Axelrod, J.,* concluded that the petitioner had demonstrated constitutional error only in the disciplinary proceeding relating to his alleged misconduct on August 11, 1986, and ordered restoration of ninety days of good time credits associated with this incident. The respondent has appealed from that part of the judgment relating to the incident of August 11, while the petitioner has cross appealed the dismissal of his other claims of disciplinary improprieties.[1] We find error on the respondent's appeal, and no error on the cross appeal.

I

The respondent's appeal challenges, on three grounds, the trial court's determination that the petitioner was entitled to a restoration of the good time credits that were forfeited as a result of the disciplinary proceeding concerning the incident that occurred on August 11, 1986. The respondent maintains that the trial court erred in: (1) rejecting the respondent's claim of res judicata; (2) concluding that the petitioner had established a due process violation; and (3) ordering restitution of good time credits rather than a rehearing by a disciplinary committee. Because we agree with the first of these claims of error, we need not consider the others.

---

[1] The other two claims not quashed by the trial court, *O'Neill, J.,* were found by the trial court, *Axelrod, J.,* to be unpersuasive on their merits. No appeal has been taken from these rulings by Judge Axelrod.

The trial court's memorandum of decision and the record contain the facts of the August 11, 1986 incident.[2] A correction officer filed a disciplinary report charging the petitioner with having assaulted a fellow inmate named Colgan and with disobediance of the correction officer's direct order to stop. On the same day, a second correction officer, Captain Revera, investigated this incident, and filed a written report notifying the petitioner that a hearing would be held before a disciplinary committee on August 14, 1986. The petitioner requested that he be allowed to call both Colgan and Revera as witnesses at the hearing. The committee denied this request. Although no reason was proffered for Revera's absence, prison authorities explained that Colgan, as the victim of the alleged assault, was not produced because of an institutional need to preserve the safety and security of inmates and staff. The evidence contained in Revera's signed written report was the sole basis for the disciplinary committee's finding that the petitioner was guilty of the misconduct with which he had been charged.

The petitioner had previously unsuccessfully attacked the constitutionality of this disciplinary hearing in a federal civil rights action under 42 U.S.C. § 1983. *McCarthy* v. *Lopes,* Civil No. H-86-1366 (TEC) (D. Conn. 1987), appeal dismissed, No. 87-2397 (2d Cir. 1987), cert. denied, 485 U.S. 966, 108 S. Ct. 1236, 99 L. Ed. 2d 435 (1988). Although this adverse federal judgment was called to the attention of the trial court, the court refused, for two reasons, to give it any binding effect. The court held that the federal judgment could neither deprive a state court of its independent authority to resolve disputed questions of fact and law nor super-

---

[2] The trial court misstates the incident as having occurred on August 14, the date of the disciplinary hearing relating thereto.

sede the inherent responsibility of a habeas court to supervise the constitutionality of disciplinary proceedings in state correctional institutions.

Reaching the merits, the trial court independently determined, as had the federal court, that the failure to produce the inmate Colgan had been satisfactorily explained.[3] With respect to the absence of Revera, however, the court concluded that "[t]he failure of the respondent to explain in any manner the reason why the Corrections Officer who investigated the disciplinary report was not allowed to testify at the disciplinary hearing, although requested to do so by the petitioner, results in the August 14, 1986 disciplinary hearing having been conducted in violation of the Due Process clause of the Fourteenth Amendment."

An examination of the pleadings filed by the petitioner in the federal District Court furnishes a useful point of departure for our assessment of the trial court's rejection of the respondent's res judicata argument. We recognize that these pleadings were not formally made a part of the record at trial, perhaps because the trial court's ruling on this issue did not turn on an analysis of what had actually transpired in the federal court. We may nonetheless take judicial notice of the court files in another suit between the parties, especially when the relevance of that litigation was expressly made an issue at this trial. See *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities,* 202 Conn. 150, 153 n.2, 520 A.2d 186 (1987); *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 591, 409 A.2d 1029 (1979).

The pleadings reveal that the petitioner's federal civil rights action contained factual allegations describing

---

[3] The petitioner's cross appeal does not challenge this ruling.

the petitioner's unsuccessful efforts to call both Colgan and Revera as his witnesses before the correctional institution disciplinary committee.[4] Each of his legal claims of constitutional deprivation incorporated these factual allegations by reference. Furthermore, in a separate legal claim, the petitioner specifically contended that the "[d]efendants violated [the plaintiff's] right to be free from [cruel] and [unusual punishment] and [corporal] punishment without due process of the law in violation of the fourteenth amendment of the United States constitution when defendants denied [the plaintiff's] requests to call witness inmate Colgan and Captain Revera which is a quasi judicial right established through the inmate rule book of regulations. Page 16, Section 47 Hearing at J and K." These pleadings clearly establish that the federal court had before it the identical underlying claim concerning the events of August 11, 1986, that the petitioner sought to relitigate in the present habeas corpus action.

This court has previously decided that, "[i]n principle, res judicata applies to criminal as well as civil proceedings. . . . Res judicata may operate to preclude relitigation by a criminal defendant as well as by the state. . . . Nonetheless, in applying the doctrine of res judicata to a defendant's constitutional claim, special policy considerations must be taken into account. The interest in achieving finality in criminal proceed-

---

[4] In a section of his complaint denominated "C. Factual Allegations," the petitioner alleged:

"13. Plaintiff informed Captain Rubba [the chairman of the disciplinary committee] that he wanted to call inmate Colgan as a [defense] witness and that his request was in conjunction with page 16 of the inmate handbook of regulations, section 47 hearings at J.

"14. Defendant Rubba flatly denied his request without [elaboration].

"15. Plaintiff then asserted that Captain Revera lied and that he wanted to call him as a witness.

"16. Defendant Rubba also denied this request stating he has nothing to do with it."

ings must be balanced against the interest in assuring that no individual is deprived of his liberty in violation of his constitutional rights. . . . Whether two claims in a criminal case are the same for the purposes of res judicata should therefore be considered 'in a practical frame and viewed with an eye to all the circumstances of the proceedings.' " *State* v. *Aillon,* 189 Conn. 416, 424–25, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983). In that case, we held that the defendant could not relitigate a claim of double jeopardy arising out of the same incident as that resolved in a prior case, *State* v. *Aillon,* 182 Conn. 124, 126, 138, 438 A.2d 30 (1980), cert. denied, 449 U.S. 1090, 101 S. Ct. 883, 66 L. Ed. 2d 817 (1981). We came to that conclusion despite the defendant's tender of slightly different factual allegations and legal arguments as grounds for his second claim for relief. *State* v. *Aillon,* supra, 189 Conn. 416, 426–27; see also *Duhaime* v. *American Reserve Life Ins. Co.,* 200 Conn. 360, 364–65, 511 A.2d 333 (1986). We have also held that res judicata precludes state court relitigation of matters fully litigated in federal court. *Virgo* v. *Lyons,* 209 Conn. 497, 501–502, 551 A.2d 1243 (1988); see also 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction (1989 Sup.) § 4468.

If any distinction exists between the present case and that adjudicated in *Aillon,* the present case appears to present a more compelling basis for applying res judicata. In this case, the trial court was asked to relitigate the constitutional implications of the identical incident that, on identical grounds, had been finally adjudicated in a prior lawsuit between identical parties. In both lawsuits, the petitioner claimed that the respondent's refusal to permit him to call the same two witnesses in his defense at the same disciplinary proceeding violated his constitutional rights to due process under the United States constitution. It is difficult

to imagine a closer coincidence of fact and law. As the respondent correctly notes, had the petitioner prevailed in his federal lawsuit, he could rightfully have enforced, in state court, the ancillary right to state restoration of lost good time credits that would have flowed from that federal victory.

The petitioner argues nonetheless that res judicata is inapplicable on the ground that, even if we conclude that there was transactional identity between his federal civil rights action and his state habeas corpus action, the federal court lacked remedial authority over good time credits. This argument is based on *Preiser* v. *Rodriguez,* 411 U.S. 475, 490, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973), in which the United States Supreme Court held that federal courts should not entertain a civil rights action under 42 U.S.C. § 1983 for the restoration of good time credits. Relying on principles of comity, the court took the view that such issues should be adjudicated only in actions for habeas corpus, which would require a state prisoner first to exhaust his state court remedies for alleged constitutional errors in prison administration. Id., 491–94. In *Wolff* v. *McDonnell,* 418 U.S. 539, 554, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), the United States Supreme Court construed *Preiser* as continuing to permit a state prisoner to challenge such alleged constitutional errors in a damages claim under 42 U.S.C. § 1983. The court held that *"Preiser* expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings." Id.

While we agree with the petitioner that *Preiser* and *Wolff* allowed him to proceed with a civil rights damages action to test the constitutional validity of disciplinary proceedings, we are unpersuaded that the reasoning of those cases precludes the applicability of res judicata in the present litigation. The proposition

that parallel proceedings in federal and state courts may expedite the vindication of constitutional rights, when administrative error has been shown to exist, does not justify relitigation of allegations of constitutional issues that have been found to be substantively groundless. Indeed, *Preiser* expressly states that *"res judicata* has been held to be fully applicable to a civil rights action brought under § 1983." *Preiser* v. *Rodriguez,* supra, 497. Furthermore, *Wolff* notes that "normal principles of *res judicata"* apply to parallel federal and state challenges of state disciplinary proceedings. *Wolff* v. *McDonnell,* supra, 554 n.12. Finally, the jurisprudential concern for comity that underlies *Preiser* is fully served, in this case, by applying the principle of res judicata.

The petitioner contends finally that res judicata, or claim preclusion, is inappropriate because of the principles enunciated in the Restatement of Judgments. Section 26 (1) (c) of the Restatement (Second) of Judgments (1982) suggests that courts should limit the applicability of claim preclusion so as to permit a second action by the plaintiff when "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action . . . ." The commentary accompanying subsection (1) (c) explains that its objective is to avoid giving preclusive effect to a judgment rendered under circumstances where formal barriers prevent a fair and full presentation of the entire claim. Id., pp. 236–38.

On the present record, the predicate underlying the applicability of § 26 (1) (c) of the Restatement has not been established. Although the petitioner maintains that the remedial constraints that *Preiser* and *Wolff*

impose on a federal civil rights damages action had some substantive implications for the trial on the merits of his constitutional claims, he has failed to articulate what those substantive implications might be. Given the pleadings in and the holding of the federal court, we cannot conceive how the federal court's hypothetical inability to restore the petitioner's good time credits, had he prevailed, imposed any actual barrier to his full presentation of the due process claims for damages, on which he did not prevail.

We therefore conclude that the trial court erred in permitting the petitioner to relitigate in state court the constitutional consequences of the August 11, 1986 incident, which he had previously unsuccessfully litigated in federal court. Accordingly, we must set aside the trial court's judgment restoring the petitioner's good time credits.

## II

The petitioner's cross appeal raises several issues arising out of his remaining claims that other disciplinary proceedings led to the loss of his good time credits "without a sufficient modicum of evidence to support the Respondents' charges that he was guilty of misconduct." With respect to all those disciplinary hearings that arose out of incidents predating June 17, 1985, the trial court, *O'Neill, J.,* granted the respondent's motion to quash in its entirety. The court also found the pleadings to be defective, and therefore subject to a motion to quash, with respect to certain specific incidents, also predating June 17, 1985. Because we find no error in the first of these rulings, we need not consider the merits of the others.

The only issue raised by the general motion to quash was whether *Superintendent* v. *Hill,* supra, decided June 17, 1985, is to be given retroactive effect to prison disciplinary proceedings antedating its announcement.

*Hill* held that prisoners who face the possible revocation of good time credits have a due process right to judicial review to ascertain whether the findings of a prison disciplinary board are supported by a modicum of evidence. Id., 453–56. The parties agree that *Hill* should not be applied retroactively if it announced a new rule of law. See *Stovall* v. *Denno,* 388 U.S. 293, 297, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967).

Cases prior to *Hill* recognized that prisoners have a constitutionally protected liberty interest in statutorily created good time credits, of which they can be deprived only if appropriate due process requirements are met. *Wolff* v. *McDonnell,* supra, 557; *Roque* v. *Warden,* 181 Conn. 85, 94, 434 A.2d 348 (1980). The pre-*Hill* case law focused, however, on the procedural aspects of due process, such as the right to notice of charges, to a written statement of findings, and to presentation of evidence. As the majority opinion in *Hill* itself observes, the Supreme Court of the United States "ha[d] not previously held that the Due Process Clause creates a right to judicial review [of the sufficiency of the evidence in] prison disciplinary proceedings." *Superintendent* v. *Hill,* supra, 450. In light of that statement, we agree with the respondent that *Hill's* imposition of a substantive evidentiary standard, no matter how modest, added a new due process requirement for the revocation of good time credits that we should not apply retrospectively. There was, therefore, no error in granting the motion to quash.

On the appeal, there is error, the judgment is set aside and the case is remanded with direction to deny the petition; on the cross appeal, there is no error.

In this opinion GLASS, COVELLO and HULL, Js., concurred.

ARTHUR H. HEALEY, J., concurring in part and dissenting in part. I agree with the majority's decision on

the petitioner's cross appeal, but I respectfully disagree with the decision on the respondent's appeal.

In agreeing with the respondent that the trial court erred in rejecting the respondent's claim that res judicata barred the petitioner's habeas corpus action, the majority states that although *Preiser* v. *Rodriguez,* 411 U.S. 475, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973), and *Wolff* v. *McDonnell,* 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), permit the petitioner to proceed with a civil rights damages action, they are unpersuaded that the reasoning of those cases precludes the applicability of res judicata in the present litigation. I disagree.

In *Preiser,* the United States Supreme Court addressed the issue of whether state prisoners seeking injunctive relief to compel restoration of good time credits may obtain equitable relief under the Civil Rights Act, even though the federal habeas corpus statute, 28 U.S.C. § 2254, clearly provides such a specific federal remedy. *Preiser* v. *Rodriguez,* supra, 477. The court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Id., 500. In so holding, the court did not ignore the respondent's argument that if a state prisoner brought a federal habeas corpus action attacking his confinement and subsequently filed a civil rights action for damages, that action could be barred by principles of res judicata, thereby precluding a prisoner from obtaining relief in the form of damages. Id., 493–94. The court responded: "The answer to this contention is that the respondents here sought no damages, but only equitable relief—restoration of their good-time credits—and our holding today is limited to that situation. If a state prisoner is seeking damages,

he is attacking *something other than the fact or length of his confinement,* and he is seeking *something other than immediate or more speedy release*—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy." (Emphasis added.) Id., 494. Although the respondent's argument in *Preiser* is the reverse of the situation presented in the present case, I believe that the United States Supreme Court did not intend the principles of res judicata to preclude a state prisoner from claiming restoration of his good time credits in a state habeas corpus action when the court in the first action, the federal civil rights damages action, completely lacked authority to grant the relief sought. Just as a federal habeas corpus action is an inappropriate vehicle to obtain a remedy in damages, a federal civil rights damages action is an inappropriate vehicle to seek restoration of good time credits. "[The] Court is not empowered to order a restoration of plaintiff's good time credits in the context of an action under 42 U.S.C. § 1983 . . . ." *Jacobson* v. *Coughlin,* 523 F. Sup. 1247, 1255 (N.D.N.Y. 1981), aff'd, 688 F.2d 815 (2d Cir.), cert. denied, 459 U.S. 834, 103 S. Ct. 77, 74 L. Ed. 2d 75 (1982).

The majority, in support of applying res judicata in a state habeas corpus action, sets out the following: "Indeed, *Preiser* expressly states that '*res judicata* has been held to be fully applicable to a civil rights action brought under § 1983.' " *Preiser* does say: "Principles of res judicata are, of course, not wholly applicable to habeas corpus proceedings. . . . Hence, a state prisoner in the respondents' situation who has been denied relief in the state courts is not precluded from seeking habeas relief on the same claims in federal court. On the other hand, res judicata has been held to be fully applicable to a civil rights action brought under

§ 1983. . . . Accordingly, there would be an inevitable incentive for a state prisoner to proceed at once in federal court by way of a civil rights action, lest he lose his right to do so." (Citations omitted.) *Preiser* v. *Rodriguez,* supra, 497. The *Preiser* court, I believe, was referring to the applicability of res judicata to a § 1983 cause of action that raises the same issues that were fully and fairly previously litigated in a state habeas corpus action. I do not interpret this statement in *Preiser* to support the applicability of res judicata to the state habeas corpus action in this case where the federal court actually was powerless to entertain, let alone restore, good time credits.

In *Wolff* v. *McDonnell,* supra, the respondent filed a class action suit alleging the rules, practices and procedures at the Nebraska Penal and Correctional Complex might result in the taking of good time in violation of the due process clause of the fourteenth amendment. The respondent sought three types of relief: (1) restoration of good time credit; (2) submission of a plan for a hearing procedure that complied with the requirements of due process; and (3) damages for the deprivation of civil rights. *Wolff* v. *McDonnell,* supra, 553. The threshold issue the court addressed was whether under *Preiser* the validity of the procedures for depriving prisoners of good time credits may be considered in a civil rights suit brought under 42 U.S.C. § 1983. The *Wolff* court noted that *Preiser* stated "that habeas corpus is not an appropriate or available remedy for damages claims, which . . . could be pressed under § 1983 along with suits challenging the conditions of confinement rather than the fact or length of custody." Id., 554. The court further stated: "The complaint in this case sought restoration of good-time credits, and the *Court of Appeals correctly held this relief was foreclosed under Preiser.* But the complaint also sought damages; and *Preiser* expressly contem-

plated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings. 411 U.S., at 499 n. 14." (Emphasis added.) Id., 554. Moreover, the court recognized that "[o]ne would anticipate that normal principles of res judicata would apply" to a situation where a prisoner filed a state habeas corpus action as well as a civil rights damages action." Id., 554 n.12. The majority interprets this statement to preclude "parallel federal and state challenges of state disciplinary proceedings." I do not agree. The majority fails to take notice of what the court said in *Preiser*. "If a prisoner seeks to attack both the conditions of his confinement and the fact or length of that confinement, his latter claim, under our decision today, is cognizable only in federal habeas corpus . . . . But, consistent with our prior decisions, *that holding in no way precludes him from simultaneously litigating in federal court,* under § 1983, his claim relating to the condition of his confinement." (Emphasis added.) *Preiser* v. *Rodriguez,* supra, 499 n.14. In light of the above, including the foregoing statement in *Wolff* concerning res judicata, I believe the United States Supreme Court did not intend the principles of res judicata to apply to a state habeas corpus action seeking the restoration of good time credits, a remedy the federal court could not grant in a federal § 1983 action seeking damages.

In addition, in a case similar to the present case, the Eighth Circuit Court of Appeals refused to apply principles of res judicata to a federal habeas corpus action. In *Wilwording* v. *Swenson,* 502 F.2d 844 (8th Cir. 1974), cert. denied, 420 U.S. 912, 95 S. Ct. 835, 42 L. Ed. 2d 843 (1975), the petitioner, Wilwording, was denied relief in a 42 U.S.C. § 1983 action alleging unconstitutional disciplinary measures in the Missouri state penitentiary. At the time he filed the § 1983 action, he also filed a state habeas corpus action that was subse-

quently denied. He further filed a federal habeas corpus action that was dismissed twice.[1] The District Court dismissed the petition the second time on several alternative grounds,[2] which included the ground that the habeas petition should have been viewed as a § 1983 action so that res judicata would bar relitigation. Id., 847.

In reversing the District Court's second dismissal, the Eighth Circuit Court of Appeals held that Wilwording's petition was to be viewed as a petition for habeas corpus and not as a § 1983 action. In so holding, the court reviewed the allegations in Wilwording's petition alleging the denial of substantive and procedural due process violations and stated that such allegations raise the problem of loss of good time which are issues clearly cognizable in habeas corpus under *Preiser*. Id., 848.

Although Wilwording's petition for a writ of habeas corpus asked to "relitigate the constitutional implications of the identical incident that, on identical grounds, had been finally adjudicated in a prior lawsuit between identical parties," (quoting majority opinion) that court

---

[1] The United States District Court initially dismissed the habeas petition on the ground that Wilwording had failed to exhaust a number of extraordinary writs theoretically available in Missouri in addition to the state habeas claim. The Eighth Circuit Court of Appeals thereafter affirmed the United States District Court in *Wilwording* v. *Swenson*, 439 F.2d 1331 (8th Cir. 1971). The Supreme Court of the United States, however, reversed, holding that Wilwording had adequately fulfilled the exhaustion requirement. *Wilwording* v. *Swenson*, 404 U.S. 249, 250, 92 S. Ct. 407, 30 L. Ed. 2d 418 (1971). On remand from the United States Supreme Court, the United States District Court dismissed the habeas petition again.

[2] On remand from the United States Supreme Court, the District Court denied the "petitioner relief on three alternative grounds: (1) [stated above]; (2) that even if the habeas petition was viewed outside of a § 1983 claim, the dismissal in the civil rights suit should be given 'controlling weight;' and (3) that any claims not adjudicated in the civil rights suit had not been stated in the original habeas petition and hence could not now be introduced without returning to the state courts to exhaust remedies there." *Wilwording* v. *Swenson*, 502 F.2d 844, 847 (8th Cir. 1974), cert. denied, 420 U.S. 912, 95 S. Ct. 835, 42 L. Ed. 2d 843 (1975).

refused to apply the principles of res judicata.[3] The *Wilwording* court stated: "Viewing the petition as seeking a writ of habeas corpus, traditional notions of res judicata become inapplicable. As the [United States] Supreme Court recognized in *Sanders* v. *United States,* 373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963): 'Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged. . . . The inapplicability of res judicata to habeas, then, is inherent in the very role and function of the writ.' Id. at 8, 83 S. Ct. at 1073." *Wilwording* v. *Swenson,* supra, 848.

I fully understand that the judicial doctrine of res judicata is based on the public policy that a party should not be able to relitigate a matter that he has already had the opportunity to litigate. It is fair to recognize that "[s]tability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest." *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 318, 460 A.2d 1277 (1983). We have said on a number of occasions in the res judicata context: "If the same cause

---

[3] I recognize that the opinion of the Eighth Circuit Court of Appeals does not specifically state whether the issues were identical. In the United States Supreme Court decision, the court noted that Wilwording's attorney had disclaimed knowledge of what claims were presented in the 42 U.S.C. § 1983 cause of action in his reply brief by stating: " 'As this writer did not participate as counsel in the Civil Rights Act cases and in view of the generalized nature of the claims for relief in the petitions herein, it is not known whether all of the issues intended to be presented by those petitions were presented in the Civil Rights Act cases.' " *Wilwording* v. *Swenson,* 404 U.S. 249, 252n., 92 S. Ct. 407, 30 L. Ed. 2d 928 (1971). Thus, recognizing that it was not clear from the record whether the issues raised in the earlier cases were the same as those presented on appeal, the court stated: "The effect, if any, of those actions upon the instant cases must therefore be determined on remand." Id.

The Eighth Circuit Court of Appeals, however, by addressing the issue of res judicata was clearly saying that even if the issues were identical, res judicata has no effect on Wilwording's habeas petition.

of action is again sued on [after a final judgment on the merits], the judgment is conclusive with respect to any claims relating to the cause of action which were actually made or might have been made." *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 196, 91 A.2d 778 (1952); *Lehrman* v. *Prague,* 115 Conn. 484, 490, 162 A. 15 (1932). It seems to me that there is no figurative meaning to an issue having been "litigated" in the context of res judicata in this case; the issue of good-time credit was absolutely incapable of being "litigated" in the federal court. *Preiser* said so, and *Wolff* said so. Moreover, both of those cases clearly recognized that there could be a "parallel" proceeding in the state court. It is indeed perplexing to me that that issue, therefore, cannot and is not, in this case, to be litigated in the courts of this state. " 'The principle of finality is essential; but not more essential than the principle of justice.' " *State* v. *Langley,* 156 Conn. 598, 601, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969); see *State* v. *Lee,* 65 Conn. 265, 271, 30 A. 1110 (1894).

Therefore, I dissent from the majority's disposition of the respondent's appeal.[4]

---

[4] Although this would mean that I would reach the remaining issues in the respondent's appeal, no useful purpose would be served by doing so.